UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SOLIDARITY BOOKS COLLECTIVE,   KENI WASHINGTON, ERIC EDGIN, GWEN FRISBIE-FULTON, JESSICA NEISLER, DANIEL PAQUETTE, MICHAEL REDDY, KRISTINA HULVERHSORN, KAREN NIELSON, JANE HALDEMAN, JONATHAN NOLEN, ANDREW CART, HUGH FARRELL, KARLY KNABLE, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No.  1:03-CV-2007 JDT/WTL |
| CITY OF INDIANAPOLIS, INDIANA; MARION COUNTY HEALTH AND HOSPITAL CORPORATION; LT. MICHAEL O'CONNOR, in his individual capacity; SGT. WILLIAM ROUSE, in his individual capacity; STEVE ROBERTSON, in his individual capacity; CAPT. RON LOVETT, in his individual capacity; KEVIN THOMPSON, in his individual capacity; LT. TERRY EDEN, in his individual capacity; SGT. THOMAS BLACK, II, in his individual capacity; | ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL REQUESTED |
| Defendants. | ) ) | |

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**Introductory Statement**

1.      This is an action filed to challenge the actions of the defendants which involved, among

other things, unlawful and unconstitutional entry into a building located at 2123 N.

Boulevard Avenue in Indianapolis.  The unlawful entry was made, and other actions were

taken, with the purpose and intent of interfering with plaintiffs' lawful expressive and

associational activities and which did so interfere with them.  The Fourth Amendment rights

of those plaintiffs with a possessory interest have been violated.  Additionally, the rights of

all plaintiffs under the First Amendment have been violated. Supplemental state claims are

also brought.

**Jurisdiction, Cause of Action and Venue**

2.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      This case is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of

state law, of rights secured by the Constitution of the United States.

5.      This Court has jurisdiction of supplemental state claims pursuant to 28 U.S.C. § 1367.

**Parties**

6.      Solidarity Books Collective is an independent collective, formerly located in Indianapolis,

Indiana at 2123 Boulevard Place.

7.      Keni Washington is a long-time community activist who functioned as the landlord of

Solidarity Books Collective while it was at 2123 Boulevard Place inasmuch as his mother

owned the real estate.

8.      Eric Edgin is an adult member of the Solidarity Books Collective.

9.      Gwen Frisbie-Fulton is an adult member of the Solidarity Books Collective.

10.     Jessica Neisler is an adult member of the Solidarity Books Collective.

11.     Daniel Paquette is an adult member of the Solidarity Books Collective.

12.     Michael Reddy is an adult member of the Solidarity Books Collective.

13.     Kristina Hulvershorn is an adult member of the Solidarity Books Collective.

14.     Karen Nielson is an adult member of the Solidarity Books Collective.

15.     Jane Haldeman is a long-time community activist in the Indianapolis, Indiana, area.

16.     Jonathan Nolen is an adult member of Solidarity Books Collective.

2

17. Andrew Cart is an adult member of Solidarity Books Collective.

18. Hugh Farrell is an adult member of Solidarity Books Collective.

19. Karly Knable is an adult member of Solidarity Books Collective.

20. The City of Indianapolis is a municipal corporation.

21. The Marion County Health and Hospital corporation is a municipal corporation.

22. Lt. Michael O'Connor is employed by the police department of the City of Indianapolis as a lieutenant in charge of the Indianapolis Police Department's intelligence unit.

23. Sgt. William Rouse is employed by the police department of the City of Indianapolis as a sergeant in the Indianapolis Police Department's intelligence unit.

24. Capt. Ron Lovett is the Assistant Director of Fire Prevention at the City of Indianapolis' fire department.

25. Kevin Thompson is a building inspector for the City of Indianapolis' Department of Metropolitan Development.

26. Lt. Terry Eden is a lieutenant with the City of Indianapolis' police department.

27. Sgt. Thomas Black, II, is a sergeant with the City of Indianapolis' police department.

28. All individual defendants are sued in their individual capacities.

**Factual Allegations**

29. Solidarity (hereinafter "Solidarity")Books Collective is a cooperative information shop. It is a place for community persons to meet and to disseminate information.

30. At the time of the incidents which give rise to this litigation, Solidarity was located at 2123 Boulevard Place in Indianapolis, Indiana.

31. 2123 Boulevard Place is owned by Keni Washington's mother and with her permission he

rented the premises to Solidarity.

32.    The front three rooms of the first floor of Solidarity were accessible to the public when Solidarity was open and the remainder of Solidarity at 2123 Boulevard place, which included an upper floor and basement, is private.

33.    There were three bedrooms on the upper floor of 2123 Boulevard Place and people resided there.

34.    The City of Indianapolis hosted the National Governor's Association meeting in mid-August of 2003.

35.    Plaintiffs, and others, planned a series of lawful protests around the time of the National Governor's Association and Solidarity was a place where persons gathered to discuss and plan the lawful protests.

36.    Defendants O'Connor, Rouse and Robertson, and others, participated in meetings with other law enforcement and public officials where, among other things, Solidarity Books Collective was discussed.

37.    Defendants O'Connor, Rouse and Robertson believed that persons at Solidarity and Solidarity might disrupt the National Governor's Association meeting.

38.    Defendants O'Connor, Rouse and Robertson wished to gain information about Solidarity, its members and supporters, and wished to prevent Solidarity and its members and supporters from engaging in activity, including lawful protest activity, which could be disruptive to the National Governor's Association.

39.    Defendants O'Connor and Rouse ordered that the Indianapolis Police Department engage in surveillance of Solidarity and plaintiffs prior to August 14, 2003.  This was designed to

both gain information about Solidarity, its members and supporters, as well as being designed to demonstrate such a strong and obvious law enforcement presence that Solidarity, its members and supporters, would be discouraged from engaging in protest activity.

40.    In an effort to gain more information about Solidarity, defendants O'Connor and Rouse had undercover officers enter the public area of Solidarity.

41.    In advance of the National Governor's Association meeting, representatives of the Indiana State Police, Indianapolis Police Department, and other agencies met regularly to discuss preparations for the meeting.

42.    At the August 6, 2003 meeting of the group a discussion was had as to how law enforcement could lawfully enter Solidarity Books Collective to do a complete search of the premises.

43.    At that time, defendant Rouse noted that one of the undercover officers had indicated that there might be fire or housing code violations at Solidarity Books Collective.

44.    Prior to August 14, 2003, defendants Rouse and O'Connor ordered or engaged in surveillance of Solidarity Books Collective which involved officers watching the building, and obtaining and investigating the license plate numbers of those who came and went from the building.  Some of this surveillance was obvious to plaintiffs in that it involved police cars frequently cruising by 2123 Boulevard Place.

45.    This obvious surveillance activity was intimidating and distressing.

46.    Defendants Rouse, O'Connor, and Robertson , along with others, determined that the appropriate city agencies would be contacted to do a housing and fire inspection of 2123 Boulevard and that this would allow law enforcement to accompany the inspectors and to enter Solidarity Books Collective.

5

47.   As a matter of policy and practice the City of Indianapolis' police department's intelligence division will have housing inspectors conduct inspections of property that the department has an intelligence interest in so as to gather information through searches of property that the police do not have probable cause to enter.

48.   There was insufficient evidence to seek a search warrant to enter Solidarity and defendants O'Connor, Rouse and Robertson had no lawful way to enter Solidarity.  Defendants Rouse, O'Connor and Robertson agreed to act in concert to gain entry into Solidarity Books Collective, despite the fact that there was no lawful cause to issue a warrant or otherwise search Solidarity for evidence of criminal activity

49.   Defendant Rouse determined that the entry into Solidarity would occur during the evening of August 14, 2003.

50.   The Indianapolis Fire Department, Marion County Health and Hospital Corporation, and the City of Indianapolis Department of Metropolitan Development employ inspectors who are employed to inspect dwellings and businesses for, respectively: violations of relevant fire codes; violation of the Marion County Housing Code; and, violations of relevant housing codes.

51.   Based on instructions from defendant Rouse, defendant Robertson contacted representatives of the Indianapolis Fire Department, Marion County Health and Hospital Corporation, and the City of Indianapolis Metropolitan Development and directed that the agencies send inspectors to perform an inspection of the property located at 2123 Boulevard Place during the late evening of August 14, 2003.

52.   The Health and Hospital Corporation designated housing inspectors Phyllis Peden, Lynne

Lynch, and Tim McMillan to take part in the inspection and to enter the property.

53.    The Indianapolis Fire Department designated fire inspector Captain Lovett to take part in the inspection and to enter the property.

54.    The City of Indianapolis' Department of Metropolitan Development designated housing inspector  Kevin Thompson to take part in the inspection and to enter the property.

55.    Defendant Rouse also contacted members of the Indianapolis Police Department's bomb squad and the Indiana State Police and invited them to be present at the search of the premises at 2123 Boulevard Place on August 14, 2003.

56.    The representative of the Indianapolis Police Department's bomb squad invited a member of the United States Department of Justice's Bureau of Alcohol, Tobacco and Firearms, to be present at the search.

57.    All the above persons met in the parking lot of the downtown Indianapolis Police Department police station during the evening of August 14, 2003 where, after being addressed by defendant Rouse, they proceeded to 2123 Boulevard Place

58.    On Thursday, August 14, 2003, at approximately 9:00 p.m. more than 15 inspectors and law enforcement personnel descended upon the premises of Solidarity Books Collective, 2123 Boulevard Place.  Additional law enforcement personnel parked their cars near the property and observed.

59.    This show of force was designed, among other things, to intimidate Solidarity Books Collective, its members and supporters.

60.    At this time Solidarity Books Collective was not open and its front door was locked.

61.    Defendant Lovett, with defendant Thompson, knocked on the front door of Solidarity Books

Collective.

62.    A police officer from the Seattle, Washington police department, who was observing the Indianapolis Police Department's security preparations for the National Governor's Association meeting, took videos of the goings on from the outside of Solidarity Books Collective.

62.    Plaintiffs Paquette and Edgin came on to the front porch.  The door was locked behind them.

63.    Defendant Lovett indicated that he was there to do a fire safety inspection.

64.    Defendant Lovett was asked if he had a warrant and he responded that he did not need a warrant to conduct the inspection because he interpreted Indiana law as allowing him to enter the premises without a warrant.

65.    Defendant Lovett then entered the premises and was eventually followed by all the individual defendants, with the exception of defendant O'Connor.  Three housing inspectors from the Health and Hospital Corporation also entered the premises.

66.    The Code of the Health and Hospital Corporation of Marion County, Sec. 21-201, states that inspectors from the Health and Hospital Corporation "bearing proper credentials and identification, shall be permitted to enter upon all properties at reasonable times for the purposes of inspection, observation, measurement, sampling and testing necessary to carry out the provisions of the Code."

67.    There were no exigent or other circumstances which justified entering the premises without a warrant.

68.    At no time was valid consent given for the defendants to enter the premises.

69.    At no time was there legal cause to come onto Solidarity's property or to conduct a search.

8

70.    Health and fire inspectors and law enforcement officers entered the premises and engaged in a search of every room of the house which took more than 30 minutes.  This included non-public areas.

71.    While the inspection was going on defendant Robertson took pictures inside Solidarity Books Collective, including pictures of the organization's calendar and planning chart for their protest activities.  This had absolutely nothing to do with any inspection activity.

72.    Defendant Robertson has conceded that he entered the house for purposes of "observation."

73.     Defendant Robertson and Rouse attempted to discover information about Solidarity, its members, and the planned protest activities while the inspection was occurring.

74.    On August 14, 2003,  plaintiffs Paquette, Edgin, and Reddy resided on the upper floors of Solidarity in private rooms. Their residential areas were entered and searched by inspectors and a number of the defendants.

75.    During the time that Solidarity was being searched all of the individual plaintiffs, with the exception of plaintiff Nolen, were on the  premises of 2123 Boulevard Place.  A number of the plaintiffs, with the exception of plaintiff Nolen, arrived after the beginning of the incident,  but all were present for part of the search and/or observed the search.

76.    While a number of the defendants entered the house, other Indianapolis Police Department Officers proceeded to give tickets to vehicles on the street which they claimed were parked more than 12 inches from the curb.  A number of the cars were towed, despite the fact that owners asked to be able to move them prior to towing.

77.    Defendant Eden has conceded that the cars were towed so that they could be searched.

78.    At the time of the raid on Solidarity, plaintiff Frisbie-Fulton was traveling near Solidarity

in her car and was stopped by unknown Indianapolis Police Department officers without cause. After 10 minutes she was informed that she could leave and she proceeded to Solidarity.

79.    Immediately after the raid, the individual defendants and others met at a nearby restaurant for a "debriefing." At this meeting defendant Robertson discussed what he had seen in Solidarity and showed the group the digital photos on his camera of Solidarity's camera and chalkboard. Defendant Robertson gave his assessment to the group as to whether he believed that Solidarity and its members and supporters were a danger.

80.    Following the incident, defendant Lovett and employees of defendant Health and Hospital Corporation issued their notices concerning violations found. The notices are attached to the original Complaint in this cause and are hereby incorporated by reference.

81.    On Friday, August 15, 2003, while plaintiff Nolen was at Solidarity, he noticed that a white van full of unknown uniformed Indianapolis Police Department officers drove by Solidarity on numerous occasions.

82.    At approximately 9:00 p.m. on August 15, 2003, the van stopped in front of Solidarity and numerous officers left the van and began shining their flashlights into Solidarity's yard. The police left and then returned in approximately thirty minutes and again walked around the property, shining their flashlights into the property.

83.    This activity was part of the surveillance activity directed against Solidarity Books Collective, its members and supporters, by members of the Indianapolis Police Department acting at the behest of defendant Rouse.

84.    Plaintiff Nolen noticed that when the officers returned they had plastic handcuffs displayed

10

on their belts.

85.   The actions of the City of Indianapolis and defendants Rouse, Robertson, O'Connor, Eden and Black,  were designed to deter plaintiffs from exercising their lawful First Amendment rights and plaintiffs were intimidated by the actions of defendants and their First Amendment rights were therefore chilled.

86.   Among other things, the actions of  the City of Indianapolis and defendants Rouse, Robertson, O'Connor, Eden and Black have disrupted the effectiveness  of Solidarity and its members to engage in First Amendment activities and have caused plaintiffs to be less willing and able to engage in legitimate First Amendment protest activities in Indianapolis. Additionally, plaintiffs are fearful that exercise of lawful activities will cause further harassment and possibly arrest.

87.   Plaintiffs have been injured by the actions of defendants.

88.   At all times defendants acted under color of state law.

**Jury trial demand**

89.   A jury trial is requested on all issues so triable.

**Legal claims**

90.   Defendants City of Indianapolis, Robertson, Rouse, O'Connor, Eden and Black, violated the First Amendment rights of plaintiffs by agreeing to engage in actions and  by engaging in actions designed to discourage plaintiffs from engaging in lawful political associational activities and which did so discourage plaintiffs.

91.   Defendants City of Indianapolis, Marion County Health and Hospital Corporation, Lovett, Rouse,  Robertson, McMillan, Eden and Black, unlawfully  searched the premises of

11

Solidarity and unlawfully invaded the privacy of plaintiffs Solidarity, Edgin, Paquette and Reddy, without a warrant, exigent circumstances, or consent,  in violation of the Fourth Amendment to the United States Constitution.

92.    Although he did not physically enter the property, defendant O'Connor is liable for entering into an agreement with the other defendants to violate the Fourth Amendment rights of plaintiffs Solidarity, Edgin, Paquette and Reddy, where such a violation did occur.

91.    The unlawful search of the premises of Solidarity and the residence of plaintiffs Edgin, Paquette and Reddy by the City of Indianapolis and the Marion County Health and Hospital Corporation represents the state torts of trespass and the intentional infliction of emotional distress for which the municipal entities are liable.

92.    The unlawful seizure of plaintiff Frisbie-Fulton represents the tort of false arrest and the intentional infliction of emotional distress, among others, for which the City of Indianapolis is liable.

**Requested relief**

WHEREFORE, plaintiffs request that this Court:

1.    Award them their damages

2.    Award them their costs and attorneys' fees under 42 U.S.C. § 1988.

3.    Award them all other proper relief.

<div style="margin-left:50%">

s/Kenneth J. Falk/
Kenneth J. Falk
No.  6777-49
Indiana Civil Liberties Union
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059 ext. 229
Fax: 317/635-4105

</div>

E-mail: ken.falk@iclu.org


s/Katy Yang-Page/
Katy Yang Page
Indiana Civil Liberties Union
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
Fax: 317/635-4105
E-mail: katy.yang-page@iclu.org

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

_____I hereby certify that on this 8th day of October, 2004, a copy of the foregoing was filed electronically with the Clerk of this Court.  Notice of this filing will be sent to the following persons by operation of the Court's electronic filing system and the parties may access this filing through the Court's system.

Anthony W. Overholt
Mark J. Crandley
Office of Corporation Counsel
Room 1601 - City County Building
200 E. Washington St.
Indianapolis, IN 46204

Chad M. Buell
Deputy Attorney General
IGCS - 5th Floor
302 W. Washington St.
Indianapolis, IN 46204

Greg Ullrich
Assistant General Counsel
Health and Hospital Corporation
3838 N. Rural
Suite 820
Indianapolis, IN 46205

 s/Kenneth J. Falk/
Kenneth J. Falk

13